IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SURATKUMAR PATEL, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | No. 14-5845 |
| ROHIT PATEL, et al., : | |
| : | |
| Defendants. : | |

**Goldberg, J.**                                                                                                         **May 25, 2016**

### MEMORANDUM OPINION

This case involves claims for conversion, fraud, and unjust enrichment under Pennsylvania law. Plaintiff, Suratkumar Patel, seeks damages from Defendants, Rohit and Pushpa Patel (husband and wife), in the amount of $136,000 based on an investment relationship between Plaintiff and Rohit. Plaintiff alleges that, pursuant to a verbal settlement agreement, Defendants gave him fourteen (14) post-dated checks totaling $136,000 from their joint bank account, instructed him to wait before cashing them, and then when Plaintiff did in fact attempt to cash one of the checks, it did not clear due to insufficient funds. He asserts that Defendants knew there were insufficient funds to cover the checks, misrepresented to him that sufficient funds were presently available, and continue to deprive him of the funds.

Before me is Defendants' motion to dismiss for failure to state claims upon which relief can be granted. Defendants argue that Plaintiff's tort claims are barred by the "gist of the action" doctrine, or, alternatively, that Plaintiff has failed to plead facts that plausibly entitle him to relief.[1] For the reasons that follow, Defendants' motion will be granted in part and denied in part.

---

[1] Defendants have not moved for dismissal of Plaintiff's unjust enrichment claim.

I.      **FACTUAL AND PROCEDURAL HISTORY**[2]

On September 15, 2011, Defendant Rohit called Plaintiff on the telephone and inquired as to whether Plaintiff would be interested in providing Rohit with investment money. Plaintiff alleges that Rohit promised to provide Plaintiff with compounding interest credits on a monthly basis in exchange for any investment funds. The amount of compounding interest ranged from six (6) to ten (10) percent depending on whether Rohit was traveling internationally or present in the United States.[3] Rohit allegedly promised to provide Plaintiff with a periodic accounting of his investment and corresponding interest credits through email and telephone correspondence. Plaintiff agreed to invest. (2d Am. Compl. ¶¶ 4–22.)

From October 11, 2011 through January 30, 2012, Plaintiff provided Rohit with approximately $60,520. He did this through a series of checks and money orders during the roughly four-month period ranging in value from a few hundred dollars to several thousand. (Id. at ¶¶ 26–62.) Rohit periodically credited Plaintiff's account with accrued interest. Plaintiff did not send any further checks or money orders after January 30, 2012. (Id. at ¶¶ 23–25, 30, 53, 58, 63; Ex. A.)

Over the next several months, Rohit continued to apply interest credits to Plaintiff's account balance. Additionally, Rohit occasionally sent checks to Plaintiff drawn against the account.[4] These payments were deducted from the account balance total, which reached its maximum of $155,232.85 on December 31, 2012. (Id. at ¶¶ 67–108; Ex. A.)

---

[2] The following facts are derived from Plaintiff's Second Amended Complaint and the exhibits attached thereto, unless otherwise noted.

[3] The higher interest rate of ten percent was based on Defendant Rohit allegedly stating that his being present in the United States would allow him to make better investments for Plaintiff. (2d Am. Compl. ¶ 11.)

[4] Rohit sent Plaintiff a series of "withdrawal" checks, each in the amount of $3,000. (2d Am. Compl., Ex. A.)

On July 30, 2013, Plaintiff notified Rohit that he wished to close out his account, and receive the proceeds then totaling $152,232.85.[5] On July 31, 2013, the very next day, both Defendants met with Plaintiff at his home in New Jersey. The parties allegedly agreed (verbally) that Defendants would pay Plaintiff $136,000 in exchange for full satisfaction of the account balance total. Plaintiff was then provided with fourteen (14) post-dated checks from Defendants' joint bank account. Both Defendants' names appeared on the checks. The checks totaled $136,000. At least one of the Defendants allegedly instructed Plaintiff to wait a few months before cashing them, but assured Plaintiff that the funds were presently available. (2d Am. Compl. ¶¶ 109–131, 170; Ex. B.)

On March 3, 2014, Plaintiff attempted to cash one of the checks given to him at the July 31, 2013 meeting. The check did not clear due to insufficient funds. On April 4, 2014, Plaintiff's attorney called Rohit regarding the the lack of funds in Defendants' joint bank account. Plaintiff alleges that Rohit acknowledged during the conversation that he owed Plaintiff $136,000, but stated he did not have the funds to cover the checks. (2d Am. Compl. ¶¶ 132–34; Ex. C.)

On April 15, 2014, Plaintiff's attorney attempted to resolve the debt owed by drafting a promissory note that provided for monthly payments to Plaintiff until the $136,000 was paid in full. Plaintiff alleges that on May 16, 2014, Rohit verbally agreed to the promissory note. To date, neither Defendant has provided Plaintiff with any funds owed under the alleged verbal agreement from July 31, 2013 to settle the investment account for $136,000, nor has either Defendant signed the promissory note. (2d Am. Compl. ¶¶ 135–38; Ex. D.)

Plaintiff filed his complaint on October 15, 2014, advancing four claims: Conversion (Count I); Fraudulent Misrepresentation (Count II); Fraudulent Concealment (Count III); and

---

[5] The account balance as of this date was reduced from its maximum of $155,232.85 because Rohit had issued a $3,000 "withdrawal" payment to Plaintiff.

Unjust Enrichment (Count IV). (2d Am. Compl. ¶¶ 149–218.) In the "Damages" section of his second amended complaint, Plaintiff alleges that, "[a]s a result of the insufficient funds in Defendants' account, Plaintiff has suffered a loss of One Hundred Thirty Six Thousand Dollars ($136,000.00)." (Id. at ¶ 148.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. While plausibility "does not impose a probability requirement at the pleading stage," it does require "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a claim. Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

Additionally, Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead "with particularity the circumstances constituting fraud." Iqbal, 556 U.S. at 686. To satisfy this heightened pleading standard, a plaintiff must plead or allege the date, time, and place of the

alleged fraud, or otherwise "inject precision or some measure of substantiation" into his allegations. Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). However, intent and knowledge may be alleged generally. Fed. R. Civ. P. 9(b).

## III. ANALYSIS

### A. *"Gist of the Action" Doctrine*

Under Pennsylvania law, the gist of the action doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. It generally operates to "preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. 2005). Whether the gist of the action doctrine applies in any particular setting is a question of law. Synthes, Inc. v. Emerge Med., Inc., 25 F. Supp. 3d 617, 724 (E.D. Pa. 2014).

The doctrine is not limited to discrete instances of conduct. Rather, by its own terms, it is concerned with the "nature of the action as a whole." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 15 (Pa. Super. 2002). "'Gist' is a term of art … that refers to 'the essential ground' … without which there would be no cause of action. The 'gist of the action' test … is [thus] a general test concerned with the 'essential ground,' foundation, or material part of an entire 'formal complaint' or lawsuit." Hart, 884 A.2d at 340 (quoting eToll, Inc., 811 A.2d at 15). To proceed in tort, the wrong ascribed to the defendant must be the gist of the action, and the contract collateral. Haymond v. Lundy, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000). "Pennsylvania courts have wrestled with whether the gist of the action doctrine applies to a cause of action for fraud." Synthes, Inc., 25 F. Supp. at 724.

"[W]hile the existence of a contractual relationship between two parties does not prevent one party from bringing a tort claim against another, the gist of the action doctrine precludes

[fraud] suits for the mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to the tort." Addie v. Kjaer, 737 F.3d 854, 865-66 (3d Cir. 2013).

The Pennsylvania Supreme Court recently announced that the "source of duty" inquiry is the "touchstone standard for ascertaining the true gist or gravamen of a claim[.]" Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014). The court stated:

> [The] substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort … is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract…. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Id. at 68 (citations omitted); see also eToll, Inc., 811 A.2d at 14 ("[A] claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."). Under this analysis, if the facts of the claim establish that the duty owed to a plaintiff arises from the defendant's specific promise to do something, the doctrine applies as the duty breached is rooted in contract.

Prior to Bruno, the Pennsylvania Superior Court's decision in eToll was considered the seminal case on the "gist of the action" doctrine, and held that tort claims are generally barred where: (1) the claim arises solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in the contract itself; (3) liability stems from a contract; or (4) the success of the tort claim essentially duplicates a breach of contract claim or is wholly dependent on the terms of a contract. eToll, Inc., 811 A.2d at 19.

The United States Court of Appeals for the Third Circuit has acknowledged that, while the Pennsylvania Supreme Court did not explicitly overrule eToll or its progeny when it decided Bruno, the Bruno opinion did not rely on any of the eToll factors (mentioned above) in reaffirming the duty-based standard from which eToll partially departs, nor did it rely on eToll's "inextricably intertwined" language. Dommel Properties LLC v. Jonestown Bank & Trust Co., 626 F. App'x 361, 366 (3d Cir. 2015).

As such, while the applicability of the doctrine is a matter of law, the Third Circuit has recognized that the gist of the action doctrine "cannot be captured by any precisely worded test. Instead, [it calls] for a fact-intensive judgment as to the true nature of a claim." Williams v. Hilton Grp. PLC, 93 F. App'x 384, 386 (3d Cir. 2004); see also Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 186 (3d Cir. 2015). In any case, "there may be particular tort claims that are barred by the gist of the action doctrine while others are not." Mirizio v. Joseph, 4 A.3d 1073, 1084 (Pa. Super. 2010). Therefore, each claim "must be analyzed independently and a determination made as to whether [each] tort claim is the gist of the action and the contract is collateral to the matter." Id. at 1085.

### B. *Conversion* (Count I)

Under Pennsylvania law, conversion is defined as the "[1] deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, [2] without the owner's consent and [3] without legal justification." Sizemore v. Hotwire Comm., LLC, 2015 WL 2381059, at *7 (E.D. Pa. May 18, 2015). Courts within the Third Circuit have "dismissed conversion claims under the gist of the action doctrine where the alleged entitlement to the [funds] arises solely from [a] contract between the parties." Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012). And while money may be

7

the subject of a claim for conversion, the failure to pay a debt is not conversion. Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. 1987); see also Montgomery v. Fed. Ins. Co., 836 F. Supp. 292, 301-02 (E.D. Pa. 1993) ("[A] mere failure to pay a debt which is allegedly owed to plaintiff … was not intended by [Pennsylvania] courts to constitute conversion.").

Additionally, where the success of a conversion claim depends entirely on the obligations as defined by a contract, the gist of the action doctrine applies. Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 584 (Pa. Super. 2003); Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 622 (E.D. Pa. 2010) (while "mere existence of a contract between the parties does not automatically foreclose the parties from raising a tort action, a party cannot prevail on its action of conversion when the pleadings reveal merely a damage[s] claim for breach of contract.") (citations omitted).

Here, Plaintiff advances his conversion claim by alleging that he is being unlawfully deprived of $136,000. He argues that he has the legal right to the $136,000 because the fourteen personal checks furnished to him constituted a "valid settlement" agreement in accordance with the parties' July 31, 2013 meeting. (2d Am. Compl. ¶ 157.) In other words, Plaintiff's principal allegation in support of his conversion claim is that he is legally entitled to the $136,000 because he entered into a valid settlement agreement with Defendants, and they failed to perform on that settlement agreement. Indeed, the damages requested are for the exact amount of the alleged settlement agreement—$136,000. (Id. at ¶ 148.)

Even when construing Plaintiff's allegations in the light most favorable to him, and assuming their veracity, as I am required to do, Plaintiff's claim for conversion must be dismissed because the alleged source of Defendants' duty to pay Plaintiff $136,000—based on Plaintiff's own allegations—arose from the alleged settlement agreement, a contract, and is thus barred by the "gist of the action" doctrine.

C. *Fraudulent Misrepresentation* **(Count II)**

The elements of fraudulent misrepresentation are: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) a resulting injury proximately caused by the reliance. Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 290 (Pa. Super. 2010).

Whether the "gist of the action" doctrine applies to Plaintiff's fraud claims is a much closer call. Even after the Pennsylvania Supreme Court's recent pronouncement in Bruno of its adherence to the "source of duty" analysis, courts are still left to fact-intensive judgments as to the true nature of a given claim. Roberts Tech. Grp., Inc. v. Curwood, Inc., 2015 WL 5584498, at *13 (E.D. Pa. Sept. 23, 2015).

On the one hand, some courts have held—albeit prior to Bruno—that "the gist of the action doctrine should apply to claims for fraud in the performance of a contract." eToll, Inc., 811 A.2d at 20 (emphasis omitted). To that end, "[m]aking boiler plate allegations that a defendant's failure to live up to its contractual obligations proves that the statements concerning [his] ability to perform were false, fraudulent or misleading reflects nothing more than the epitome of a self-serving attempt to bootstrap a contract claim into one for fraud." Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, LLC, 929 F. Supp. 2d 460, 475 (W.D. Pa. 2013).

On the other hand, because the doctrine calls for such a fact-intensive inquiry, several courts within the Third Circuit have cautioned against deciding the applicability of the doctrine at the motion to dismiss stage. See e.g., AscellaHealth, LLC v. CRx Health Servs., LLC, 2015 WL 1573395, at *4 (E.D. Pa. Apr. 9, 2015) ("The court shall deny the motion to dismiss … while recognizing that, prior to trial, it may be required to rule definitively on the application of

9

the gist of the action doctrine in this case."); Haymond v. Lundy, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000) ("Caution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry."); Foster v. Nw. Mut. Life, 2002 WL 31991114, at *3 (E.D. Pa. July 26, 2002) ("[A]t this early stage, we will allow Plaintiff to maintain his [fraudulent] misrepresentation claims, though we advise the parties to be cognizant of the 'gist of the action' test as they conduct discovery."); Hess v. Nationwide Life Ins. Co., 2015 WL 5472897, at *8 (W.D. Pa. Sept. 17, 2015) ("Given the uncertainty in Pennsylvania law concerning this doctrine and the parties' limited briefing, it [may] not [be] necessary to resolve this issue at [the motion to dismiss] stage of the proceedings."); GNC Franchising, Inc. v. O'Brien, 443 F. Supp. 2d 737, 749 (W.D. Pa. 2006) ("I should follow the more prudent course of withholding judgment [at the motion to dismiss stage] on the unsettled question of law until the issues are more clearly focused and the facts definitively found.").

Additionally, two of the most recently decided cases within the Eastern District of Pennsylvania to address the applicability of the doctrine to fraud claims both concluded that the doctrine does not apply to alleged fraudulent statements made during a contractual relationship. See Synthes, Inc., 25 F. Supp. 3d at 725 (Buckwalter, J.) ("Courts have generally held that the gist of the action doctrine does not apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual

rights against the defendant.") (emphasis in original); see also Coll v. Synergis Educ. Inc., 2015 WL 5783682, at *4 (E.D. Pa. Oct. 5, 2015) (Pappert, J.) (same).[6]

Here, Defendants argue that Plaintiff has merely attempted to re-cast ordinary breach of contract claims into tort claims, and thus the "gist of the action" doctrine warrants dismissal of both his misrepresentation and concealment claims. (Defs.' Mot. to Dismiss 8.) Plaintiff responds that it is not the failure to tender payment that gives rise to these claims, but rather the furnishing of fourteen post-dated checks, coupled with the knowledge that there were insufficient funds, Defendants' intent to deceive Plaintiff, and the false assurances given to Plaintiff regarding the present availability of the funds. (Pl.'s Resp. 6.) In other words, Plaintiff argues it is the independent social policy of knowingly passing bad checks that gives rise to his fraud claims, and not Defendants' failure to satisfy any obligation under the settlement agreement.

At this stage, I conclude that dismissal of Plaintiff's fraudulent misrepresentation and concealment claims based on the "gist of the action" doctrine would be premature. Plaintiff has alleged sufficient facts that, if true, plausibly suggest that there was not only a breach of the settlement agreement, but the additional false assurances that accompanied the fourteen bad checks, and the potential concealment that the funds were not presently available (nor would they be in the future), could be viewed as separate acts aimed at deceiving Plaintiff into continuing a contractual relationship. See Synthes, Inc., 25 F. Supp. 3d at 725; Coll, 2015 WL 5783682, at *4. In other words, it is plausible that the source of Defendants' duty at the July 31, 2013 meeting was rooted in part in the broader social policy of not intentionally passing bad checks. Accordingly, I will deny Defendants' motion as to Counts II and III based on the "gist of the action" doctrine.

---

[6] Indeed, Bruno involved a situation where the doctrine did not apply to bar the plaintiffs' claims for negligence because the defendant's agent's statements, on which the plaintiffs relied (and which ultimately contributed to the plaintiffs' injuries), were deemed outside the scope of the contractual relationship.

In addition to the "gist of the action" doctrine, Defendants argue that Plaintiff's allegations fail to plead sufficient facts that plausibly make out a claim of fraud, particularly against Defendant Pushpa Patel.[7] Defendants emphasize that at several points throughout Plaintiff's Second Amended Complaint, he employs "and/or" language in an attempt to generally implicate Pushpa in the alleged wrongdoing of her husband. (Defs.' Mot. to Dismiss 13.)

After reviewing the elements of fraudulent misrepresentation, disregarding Plaintiff's legal conclusions, and keeping in mind Rule 9's heightened pleading requirement, I conclude that Plaintiff has failed to plead facts which plausibly give rise to a claim for an affirmative fraudulent misrepresentation against Pushpa Patel. There is no dispute that the checks furnished to Plaintiff were associated with a joint bank account belonging to both Defendants, and displayed Pushpa's name. (2d Am. Compl., Ex. B.) Nor is it disputed that Pushpa attended the meeting at Plaintiff's home on July 31, 2013. However, Plaintiff's own factual allegations undermine his claim that Pushpa made any *affirmative* misrepresentation to him. Specifically, Plaintiff does not allege that Pushpa had any involvement with the underlying investment relationship. She was not included as a party to the promissory note prepared by Plaintiff's attorney, and each of the checks included in "Exhibit B" to Plaintiff's Second Amended Complaint was endorsed by Rohit—not Pushpa. Finally, Plaintiff expressly alleges that he has the right to $136,000 because of "the [f]ourteen checks that were post-dated, signed, and given to

---

[7] Defendants argue that Plaintiff may not maintain his fraud claims because failure to perform a future act cannot constitute fraud. (Defs.' Mot. to Dismiss 9.) However, the Third Circuit has recognized that "[a] statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Investments, 951 F.2d 1399, 1410 (3d Cir. 1991); De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, 792 F. Supp. 2d 812, 838 (E.D. Pa. 2011) ("A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention.") (citing Mellon Bank Corp., 951 F.2d at 1409). With an undeveloped record, and where Plaintiff's allegations are that he was fraudulently induced into accepting fourteen bad checks, and was told that the funds were presently available, I conclude that his allegations are sufficient to "raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of his claim, particularly in light of the fact that intent may be alleged generally at this early stage. Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008); Fed. R. Civ. P. 9(b).

him by Defendant Rohit," and "Defendant Rohit committed a fraud against Plaintiff Surat by making a misrepresentation to Plaintiff" regarding the accessibility of the funds. (2d Am. Compl. ¶¶ 168–174.)[8] These allegations directly contradict prior paragraphs stating that Rohit "and/or" Pushpa were responsible for this same misconduct. Because Plaintiff has failed to inject the level of precision required to allege an affirmative misrepresentation by Pushpa Patel, his claim for fraudulent misrepresentation against her will be dismissed.[9]

### D. *Fraudulent Concealment* (Count III)

The elements of fraudulent concealment mirror those of fraudulent misrepresentation, with one minor exception. A claim for fraudulent concealment does not require that a misrepresentation be in the form of a positive assertion, but rather can be established by "concealment of that which should have been disclosed." Gnagey Gas & Oil Co. v. Pennsylvania Underground Storage Tank Indemnification Fund, 82 A.3d 485, 500 (Pa. Commw. Ct. 2013); Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315-16 (Pa. Super. 1991). Thus, "…fraud may arise from … an intentional concealment of true facts which is calculated to deceive the other party…. [C]oncealment must be intentional and it must relate to material information. Mere silence in the absence of a duty to speak, however, cannot suffice to prove fraudulent concealment." Sevin v. Kelshaw, 611 A.2d 1232, 1236 (Pa. Super. 1992) (citations omitted).

---

[8] I recognize that these particular allegations are conclusory, and thus not entitled to an assumption of truth. I highlight them only for the purpose of pointing out that Plaintiff alleges a misrepresentation by Rohit, not Pushpa.

[9] Defendants further argue that, pursuant to 41 P.S. § 201, which limits interest rates to six (6) percent per annum, Plaintiff was unjustified in relying on Rohit Patel's promise to credit Plaintiff's account with a ten (10) percent monthly return. However, Plaintiff's Response correctly points out that this statute applies to loans of $50,000 or less. (Pl.'s Resp. 8.) Defendants acknowledge that Plaintiff provided $60,000 to Rohit Patel. (Defs.' Mot. to Dismiss 11.) As such, I will deny Defendants' Motion on this ground. Similarly, to the extent Defendants argue that Plaintiff has not alleged any injury, I disagree. Plaintiff only agreed to settle the investment account when Rohit allegedly offered him $136,000, and provided him with the corresponding checks. Not only does Plaintiff allege that he has been deprived of the original investment funds, but he also alleges that he has not received any of the $136,000.

Courts have recognized that the particularity requirement of Rule 9(b) should be applied with some "flexibility" when the allegations pertain to fraudulent concealment. Accordingly, the heightened pleading requirement is somewhat relaxed when "key factual information remains within the defendant's control." In re Processed Egg Products Antitrust Litig., 851 F. Supp. 2d 867, 880 (E.D. Pa. 2012) (citing Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998)) (citations omitted). However, this does not mean that a plaintiff can make "boilerplate" allegations and expect to survive a motion to dismiss. Schatzberg v. State Farm Mut. Auto. Ins. Co., 877 F. Supp. 2d 232, 249 n.7 (E.D. Pa. 2012).

Additionally, the United States Court of Appeals for the Third Circuit recently reiterated that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Connelly v. Lane Const. Corp., 809 F.3d 780, 790-91 (3d Cir. 2016) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).

Defendants again argue that Plaintiff's allegations are insufficient to state a claim against Pushpa Patel. Plaintiff alleges that Defendants concealed the fact that there were insufficient funds in their joint bank account to cover the checks, and this independent duty to speak truthfully regarding the accessibility of the funds existed outside the scope of the settlement agreement, as Defendants were the only sources of information regarding the availability of the funds in their bank account. (2d Am. Compl. ¶¶ 187–90.)

At this early stage, I conclude that Plaintiff has adequately pled a claim for concealment against both Defendants. While the elements for fraudulent concealment are nearly identical to those of fraudulent misrepresentation, the distinction between the two claims is important in this case with respect to Pushpa Patel. The exhibits attached to Plaintiff's Second Amended

Complaint clearly reflect that Pushpa's name was included on the checks furnished to Plaintiff, which correspond to the couple's joint bank account. Defendants do not dispute that she traveled with her husband to Plaintiff's home on July 31, 2013, and was present for the meeting regarding the alleged verbal settlement agreement for $136,000. Plaintiff further alleged that the previous checks he received from Rohit were issued from the same joint bank account.

Taking Plaintiff's allegations as true, as I am required to do, it is plausible to suggest that Pushpa knew that $136,000 worth of checks were being issued from an account belonging to her, but knowingly omitted the fact that the funds were not presently available, nor would they be in the future. It is also plausible that she knew that Plaintiff would likely rely on this omission in accepting the checks from Rohit, since they had previously operated in this fashion. Thus, I will deny Defendants' motion as to Plaintiff's claim for fraudulent concealment.

### IV.     CONCLUSION

Defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted such that Plaintiff's conversion claim (Count I) will be dismissed because it is barred by the "gist of the action" doctrine. The motion will also be granted such that Plaintiff's claim for fraudulent misrepresentation (Count II) against Defendant Pushpa Patel will be dismissed for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The motion will be denied in all other respects.

An appropriate Order follows.